DAVID B. BARLOW, United States Attorney (No. 13117)
JOHN W. HUBER, Assistant United States Attorney (No. 7226)
Attorneys for the United States of America
185 South State Street, Suite 300
Salt Lake City, Utah  84111
Telephone:  (801) 524-5682

_____

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No.  2:10 CR 844 TS |
| Plaintiff, | : | |
| | | SENTENCING MEMORANDUM AND |
| v. | : | MOTION FOR UPWARD |
| | | DEPARTURE OR VARIANCE FROM |
| | : | GUIDELINE RANGE |
| WALTER EDMUND BOND, | | |
| | : | |
| Defendant. | | Judge Ted Stewart |
| | : | |
| | : | |

_____

The United States Attorney, by and through the undersigned Assistant United

States Attorney, hereby submits this sentencing memorandum to assist the Court in

determining an appropriate sentence for the defendant.  The Court should first find that an

upward departure from the presentence report guideline range will best satisfy the

demands of justice in this case.  Further, based upon Title 18 of the United States Code,

Section 3553(a), this Court should impose a significant term of imprisonment to

1

accomplish a fair and reasonable sentence in this matter. In particular, such a sentence will (a) comport with the nature and circumstances of the offense and the history and characteristics of the defendant; (b) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (c) afford adequate deterrence to criminal conduct; and (d) protect the public from further crimes of the defendant. The Court should also consider other aspects of the sentence, including restitution and an order regarding the consecutive imposition of the sentence.

**POST-*BOOKER* SENTENCING**

Since *United States v. Booker*, 543 U.S. 220 (2005), "rendered the Sentencing Guidelines advisory, district courts must use a two-step process at sentencing." *United States v. Hernandez-Castillo*, 449 F.3d 1127, 1129 (10th Cir. 2006). The Guidelines remain "the starting point and the initial benchmark" for calculating an appropriate sentence. *Gall v. United States*, 128 S.Ct. 586, 596 (2007). "In Step 1, the district court must consult the Guidelines and apply any applicable upward adjustments and downward departures." *Hernandez-Castillo*, 449 F.3d at 1129. "Because the Supreme Court required each district court to consult those Guidelines and take them into account when sentencing, a district court's sentencing decision necessarily includes consideration of these Guideline departure provisions." *United States v. Calzada-Maravillas*, 443 F.3d 1301, 1305 (10th Cir. 2006) (internal quotations and citation omitted). "Through that

process, the district court establishes a total offense level and corresponding sentencing range under the Guidelines." *Hernandez-Castillo*, 449 F.3d at 1129.

"In Step 2, the district court may use its discretion to impose a sentence within the Guidelines range or to vary either upward or downward from that range." *Id.* "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Gall*, 128 S.Ct. at 596. The district judge must make "an individualized assessment based on the facts presented." *Id.* at 597. If the judge decides that a non-guideline sentence is warranted, "he must then consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.*

To further assist the Court in its analysis, the United States supplements this memorandum with three categories of attachments. Attachment "A" includes counterculture artwork that glorifies the defendant's arsonist activities, often touching on his moniker "Lone Wolf." Attachment "B" includes a sampling of 2011 blog writings attributable to the defendant that speak of his role in animal rights extremism. Attachment "C" is the transcript of the defendant's sentencing hearing in the District of Colorado for his arson there.

**I.    In Determining the Appropriate Guideline Range, the Court Should Apply an Upward Departure from the Presentence Report Guideline Range**.

As the Court considers the sentencing guidelines in determining an appropriate sentence for the defendant, 18 U.S.C. § 3553(a)(4)(A), the United States recommends that an upward departure is justified and warranted in this case.  The guidelines pronounce that: "If reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history *or the likelihood that the defendant will commit other crimes*, an upward departure may be warranted."  U.S.S.G. §4A1.3(a)(1)(emphasis added).  Such is the case here where the defendant's past conduct indicates an upward departure will best accomplish a just sentence.

The defendant is a serial arsonist, ever-searching for a cause to serve as a facade justification for setting fires.  In 1996, it was an anti-religion message when the defendant broke into a church in Iowa and burned a pentagram symbol into the carpet near the chapel alter.  Again in Iowa, in 1997,  the defendant took on a different cause to sanction his arson.  He torched a home that purportedly served as a "drug house" so that he could save the neighborhood in vigilante style.  Presently, he holds to what he claims to be his new, more-permanent cause for justifying his arson crimes — animal rights extremism. He has burned to the ground a lawful business in Colorado, and attempted to do as much with the two victim businesses here in Utah.

Forget any apology for his actions. The defendant declared to the sentencing court in Colorado: "I assure you that if that [an apology] is how I felt, I would. But I'm not sorry for anything I have done, nor am I frightened by this Court's authority, because any system of law that values the rights of the oppressor over the downtrodden is an unjust system." (Attachment "C" – transcript of Colorado sentencing). In his blog posts, the defendant consistently signs off with the promise "Animal Liberation, Whatever It May Take!" He asserts that "Direct activism, legal or illegal, is morally justified and it works." (Attachment "B" – writings; specifically *Walter Bond's Address to the Animal Liberation Forum 2011*). Moreover, he calls others to follow him into extremism: "Until society stops exploiting animals. (sic) We are at war with society. Until there is an end to the destruction of the planet there will be no end to the destruction of property." (Attachment "B" – writings; specifically *11.03.2011* (sic) *Official Public Letter from Walter: In Defense of the Underground*).

When eventually released from the jurisdiction of this Court, all past indicators suggest that he will re-offend, most likely in the form of arson. Five known fires have been set ablaze in the name of whatever may be the defendant's cause *du jour*. Moreover, the defendant continues to maintain his unapologetic attitude, and boasts of his commitment to activism by criminal acts. Therefore, this Court should find that "reliable information indicates that the defendant's criminal history category substantially under-

represents the seriousness of the defendant's criminal history or *the likelihood that the defendant will commit other crimes*," and that an upward departure is appropriate.

When such a departure in warranted, "the court shall determine the extent of a departure under this subsection [§4A1.3] by using, as a reference, the criminal history category applicable to defendants whose criminal history or likelihood to recidivate most closely resembles that of the defendant's." U.S.S.G. §4A1.3(a)(4)(A). The defendant's likelihood to re-offend most closely resembles that of person with a criminal history category of VI, at the very least.[1]

**II. In Applying Section 3553(a), the Court Should Find that a Significant Term of Imprisonment, Varying Upward from the PSR Guideline Range, is Fair and Reasonable.**

The United States also asks this Court to find that a significant prison term is reasonable and appropriate irrespective of the guideline range, taking into consideration the factors set forth in 18 U.S.C. § 3553(a).

"After considering the correct Guidelines range, the district court must then consider all of the § 3553(a) factors to determine the appropriate sentence. The district court 'must make an individualized assessment based on the facts presented.'" *United*

---

[1]U.S.S.G. §4A1.3 contemplates that even category VI may not provide an adequate assessment of a defendant's likelihood for recidivism. *See* U.S.S.G. §4A1.3(a)(4)(B) ("In a case in which the court determines that the extent and nature of the defendant's criminal history, taken together, are sufficient to warrant an upward departure from Criminal History Category VI, the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case.").

*States v. Munoz-Nava*, 524 F.3d 1137, 1146 (10th Cir. 2008) (quoting *Gall v. United States,* 128 S.Ct. 586, 597 (2007)). A district court has "broad discretion to consider particular facts in fashioning a sentence under 18 U.S.C. § 3553(a), even when those facts are already accounted for in the advisory guidelines range." *United States v. Yanez-Rodriguez*, 555 F.3d 931, 946 (10th Cir. 2009).

In sentencing a defendant, the district court must "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall,* 128 S.Ct. at 597. However, it is "quite clear that the sentencing court is not required to consider individually each factor listed in § 3553(a) before issuing a sentence." The court need not "recite any magic words to show that it fulfilled its responsibility to be mindful of the factors that Congress has instructed it to consider." *United States v. Contreras-Martinez*, 409 F.3d 1236, 1242 (10th Cir. 2005).

When the sentence falls within the guideline range, the court is required only to provide a general statement of the reasons for its imposition of the particular sentence. *United States v. McComb*, 519 F.3d 1049, 1054 (10th Cir. 2007); *see also* 18 U.S.C. § 3553(c). In such a situation, a lengthy explanation is not required because it is evident that the court has adopted the Sentencing Commission's determination regarding the appropriate sentence in that particular case. *Rita v. United States,* 127 S.Ct. 2456, 2468-69 (2007) (holding that findings were sufficient where court merely listened to the arguments and concluded that the guideline sentence was "appropriate"). If the district

7

court determines that a sentence outside the Guidelines is warranted, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 128 S.Ct. at 594. A "district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with justifications." *Id*. Moreover, when a "district court decides to vary from the Guideline sentencing range after a careful, reasoned, and reasonable consideration of the § 3553(a) factors," the Tenth Circuit will not find an abuse of discretion. *Yanez-Rodriguez*, 555 F.3d at 949.

A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant.

In determining an appropriate sentence to be imposed, one of the Court's requirements is to "consider the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). To be sure, the defendant's crimes are most serious, and reflect disturbing personal characteristics, propensities, and a history of similar violence. The defendant is an arsonist who set ablaze two lawful businesses in Salt Lake County. These fires were the latest in a string of five known arson crimes at his hands. Fortunately, the Utah fires were discovered before resulting in absolute destruction of the targeted buildings, unlike two of his previous attacks. Nevertheless, the victims suffered tremendous loss.

The defendant's history as an arsonist is undeniable. He proudly claims to be the inspiration for a music video glorifying a previous arson conviction where he torched a residence in Iowa perceived to be a drug house. Having apparently switched causes that motivate his attacks, the defendant also basks in the afterglow of his Animal Liberation Front ("A.L.F.") fires in Colorado and Utah. In fact, he and his supporters romanticize his role as an arsonist in this counterculture animal rights extremism movement. (Attachment "A" – art sketches posted on extremist web pages). One sketch portrays the defendant's unique red frame eyeglasses next to a box of matches, while another displays a gas can incendiary device with the caption "people suck here's the cure!" Since arrested, the defendant has continued to champion and market his self-appointed arsonist role through blog postings. (Attachment "B" – writings). Unapologetic, the defendant publicly extols his acts of arson, and strongly encourages others to join the ranks of criminal obstructionists.

      B.      The Need to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense.

The Court should also consider the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). These factors weigh in favor of a significant term of imprisonment that varies upward from the presentence guideline range.

The defendant would have like-minded persons believe that he had performed great acts of heroic defiance worthy of respect, admiration, and personal legend. On the other hand, it is not difficult to see how preposterous such claims are in the face of the seriousness of the defendant's crimes. The defendant attempted to burn to the ground two local businesses, where law-abiding people shop and dine, and where law-abiding employees earn a living. The monetary losses are calculated in the hundreds of thousands of dollars.

In the case of the Tandy leather store, the defendant was incensed at the business's marketing of animal hide products. With the Tiburon restaurant, the defendant was fixated on a certain menu item. As a matter of proper perspective in considering the seriousness of the of the crimes, the Court should find that the defendant's actions amount to domestic terrorism[2]. His crimes were intended to intimidate and coerce the law-abiding civilian population. He triggered a multi-state investigation that burdened the resources of the Joint Terrorism Task Forces ("JTTF") in both Colorado and Utah, as well as the ATF, the FBI, and local police and fire agencies. Of course, in the counterculture extremist world these consequences are just more credentials for one who has apparently adopted a lifetime commitment to arson and criminal intimidation.

---

[2]"the term 'domestic terrorism' means activities that involve acts dangerous to human life that are a violation of the criminal laws of the United States or of any State; . . . appear to be intended to intimidate or coerce a civilian population; [and] occur primarily within the territorial jurisdiction of the United States." 18 U.S.C. § 2331(5)

A long prison term will promote respect for the law, which should be a significant in the Court's determinations. The defendant's crimes — and his endless post-offense declarations — champion disrespect for the rule of law and the safety of law-abiding persons and businesses. When he was sentenced in Colorado for an arson that completely gutted a lawful business, the defendant proudly recounted his crime. (Attachment "C" – transcript). He asserted that he was not "frightened by [the] Court's authority," and questioned the sentencing court's "morality." A significant term of imprisonment will promote respect for the law, and counter the defendant's distorted view.

Of course, penalty and punishment are also central to the purposes of sentencing. This premise is basic to civilized society, as one's choices and actions should always have consequences. The expectations are that a just punishment should not be too harsh, nor too lenient. In this matter, a standard guidelines sentence is not sufficient to accomplish a just sentence for the offenses committed, and the defendant's continued defiance.

C.  The Need to Afford Adequate Deterrence to Criminal Conduct.

As opposed to preventing this particular defendant from committing further crimes (see discussion below), the sentence should also be crafted "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C. § 3553(a)(2)(B). Based upon the level of media attention to these crimes, as well as the intent interest in the animal rights extremism movement, the Court should presume that many are watching to see the eventual sentence for the defendant's conduct. Among the many listening to the Court's

11

sentence, there are those few who are considering the defendant's forceful calls for them to join him outside the bounds of law, and inside jail. In fact, the defendant rants against those within the animal rights movement who are unwilling to commit criminal acts as he has done, characterizing them as hypocrites and posers. (Attachment "B" – writings). Accordingly, the defendant's sentence should effectively communicate that similar acts will have serious consequences. To be sure, a significant prison term here will deter others from entering such a path of criminal behavior, and thereby positively impact the public safety.

D.      The Need to Protect the Public from Further Crimes of the Defendant.

The defendant has remained a champion of using dangerous, criminal means to advance a cause. Accordingly, the Court should consider how the sentence will "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). There are two aspects to this factor as it applies to the defendant. First, the Court should use a term of imprisonment to immediately remove the defendant from efforts to organize criminal acts in the name of a cause. And second, the Court should consider the long term impact that a term of imprisonment will have on the defendant's future behavior once released or off supervision.

The defendant's criminal acts have brought him considerable notoriety within his counterculture community. He garners readership within the fringe element that promotes criminal conduct to advance a cause. A term of significant imprisonment will negate his

12

participation with those fringe elements promoting criminal acts, and assuredly protect the law-abiding public. All indicators in his past conduct and contemporaneous statements support the conclusion that the defendant will return to his dangerous destructive conduct upon release from this Court's jurisdiction. The United States requests that such a day be postponed as long as the Court finds fair and reasonable.

In addition, the Court should impose special conditions for the defendant's eventual supervised release. A review of the attached artwork and writing reveals an apparent desire by the defendant to become a counterculture, underground folk hero. Indeed, there is an argument that his yearning to be recognized, revered and respected is a major contributing factor toward the defendant's criminality. Accordingly, this Court should impose a special no-association condition on his supervised release. In another animal rights extremist prosecution in this district (2008 mink farm raid), the sentencing court did as much when it found that those defendants' association with other extremists was a motivating factor for the offenders to engage in criminal conduct. In *United States v. William Viehl and Alex Hall* (2:09CR119DB), the court imposed this supervised release restriction:

> The defendant shall not have any contact with any member or associate of the Animal Liberation Front ["A.L.F."]or Earth Liberation Front ["E.L.F."] regarding the activities of either of those organizations, either in person, by mail, by phone, by e-mail, third person, or by any other method, except as authorized by the Probation Office.

13

The A.L.F. and E.L.F. are sister movements with a common history and common objectives. This special condition is tailored to lessen the risk of danger by limiting the defendant's future association with fellow extremists bent on criminal conduct. Such a supervised release condition will surely serve the interests of continued community safety once the defendant completes his term of imprisonment.

E.      Restitution.

The Court should consider the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)(7). The victims of the Utah fires suffered disastrous damages. The Court should fashion restitution orders that fairly recognize the harms caused to the victims. Unfortunately, such a gesture may be only symbolic as the defendant's history of a persistent dilatory lifestyle does not bode well for actual restitution payment. Nonetheless, according to the facts adopted by the defendant in his statement in advance of guilty plea, restitution should be no less than $10,000 for each of the two fires.[3]

The presentence report notes that one victim has not requested a restitution order. Upon information and belief, the United States asserts that this victim is still suffering

---

[3]In paragraph 11 of the statement, the defendant agreed as follows: "I stipulate and agree that the following facts accurately describe my conduct. These facts provide a basis for the Court to accept my guilty plea and for calculating the sentence in my case: . . . I intended to damage or destroy the building and its contents by arson, and thereby interfere with the business operations. In fact, my actions resulted in over $10,000 of damage." In paragraph 12 of the statement, the defendant agreed : " to pay all restitution as ordered by the Court. I understand the payment of restitution is governed by 18 U.S.C. § 3664, and my lawyer has explained the consequences of an order of restitution."

from a state of intimidation caused by the defendant's crime, as well as the efforts of other direct activists in the animal extremist movement who have targeted the business. This victim may believe that by not requesting restitution, acts of coercion against the business will subside.

With all due respect to the victim's concern, the United States recommends that this Court intervene on the victim's behalf, as mandated, and order restitution of at least $10,000 to make that victim whole.

### III. This Court's Sentence for the Utah Fires Should Run Consecutively to the Defendant's Imprisonment for Destroying a Business in Colorado.

This Court has the discretion in determining whether this case's term of imprisonment will be served consecutively or concurrently to the defendant's Colorado arson prison term (United States District Court for the District of Colorado, case number 1:10 CR 389 CMA; sentence imposed February 11, 2011): "if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively . . . ." 18 U.S.C. § 3584(a). Nevertheless, there is a statutory presumption that the terms of imprisonment will be served consecutively in such a case: "Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." *Id.*

A sentencing court is mandated to consider Section 3553(a) factors "in determining whether the terms imposed are to be ordered to run concurrently or

consecutively . . . ." 18 U.S.C. § 3584(b). According to the analysis of the 3553(a) factors herein, the United States requests that the Court specifically order that this term of imprisonment shall run consecutively to the defendant's Colorado arson sentence of five years. In particular, the consecutive term of imprisonment will "reflect the seriousness of the offense[s], . . . and provide just punishment for the offense[s]." 18 U.S.C. § 3553(a). This Court will note that the United States has agreed not to argue for consecutive terms of imprisonment between the two Utah fires, even though such could have been ordered pursuant to Section 3584(a). The point being that the United States has already conceded an available option, to the defendant's benefit.

### Conclusion

A term of imprisonment within the guideline range outlined in the presentence report is inadequate, as it will not reasonably protect the public from the defendant's future crimes. Rather, a just sentence should — at a minimum — include a term of imprisonment at or near the high end of the range for offense level 23 and criminal history category VI, or 92 - 115 months. Such a term may be arrived at, and warranted through an upward guidelines departure pursuant to U.S.S.G. §4A1.3(a)(1). In addition, or in the alternative, such a term of imprisonment is fair and reasonable according to the Court's necessary analysis of the other 3553(a) factors. A lesser term of imprisonment would not satisfy the interests of justice in this case. The rule of law is the bedrock of our civilized society, not "direct action" committed in the name of the cause of the day and

designed to intimidate and coerce law-abiding civilians.  A significant term of

imprisonment will underscore this truth for the defendant and the community.

SUBMITTED this 7th day of October, 2011.

DAVID B. BARLOW
United States Attorney


/s/ John W. Huber
John W. Huber
Assistant United States Attorney